Thank You Judge Callahan and good morning your honors may it please the court my name is Alina Artunian joining you virtually from the law firm Mayor Brown on behalf of petitioner Jose Medina Avina in connection with his petition for review. I'd like to reserve two minutes for rebuttal and I will watch the clock. Thank you. The undisputed and credible facts here your honors compel the conclusion that Mr. Avina more than meets both prongs of the analysis to support his claim for withholding of removal under the the cat. It is undisputed that Mr. Avina's brother-in-law Jesus Alberto was shot and killed by the Jalisco cartel that his wife and Andina was abducted and later murdered by that same cartel because of a private investigation that she and Mr. Avina undertook that his kids and grandson were held at gunpoint by the cartel and that immediately after his wife's abduction two armed men appeared at his house to get him next. I think we know the facts and then on the compel standard maybe you can tell me what evidence in the record compels the conclusion that Avina was in danger after he relocated from Colima. Certainly your honors. To start the relocation point so the reason why he had torture that was inflicted on his family on his brother-in-law on his wife the abduction of his wife and that he later learned the murder of his wife holding his children at gunpoint he had to relocate your honors because of the fear for his life because he had had two armed men appear outside of his home immediately after his wife was abducted and and what's important here is to keep that in context with the fact that this is one of the most if not the most dangerous cartels in Mexico. The Yalisco cartel is recognized for a notorious for using brutal violence on its victims for an influencing all the various levels of the Mexican government and and this court had even reviewed previous petitions with the same Yalisco cartel and there's also evidence from the country conditions report which has unfortunately gone ignored by the IJ and by the board that recognizes that the Yalisco cartel has expansive reach throughout all of Mexico. But he relocated a couple of times and he wasn't bothered right? Not necessarily your honor he he relocated because he was. I have the same question I think the judge Callahan does. My information from the briefs and the record is that he was able to stay with his daughters in Puebla and Morelia and his girlfriend in Rosarito for months at a time without threats or harm. How do you respond to that? Your honor he he had stayed in very in different parts of Mexico and that's correct but the reason he had to do this the reason he went from one city to another was because he was running from a cartel that had just abducted and killed his wife. Frankly he was he was running for his life he wasn't safely relocating he wasn't on sabbatical or some sort of. You're kind of not really answering that question though because there is a different part of the inquiry you don't necessarily have to return to the city if if it was returned to Colima that would be a different situation but if people can safely relocate somewhere else then that I mean the court that can defeat your argument. It can but it shouldn't here and the reason for that is the expansive reach of the Jalisco cartel. The cartel is not just located in Colima and the court the cartel is not only focused on this one city that Mr. Avina is located the fact that they had went to his business his home his neighborhood was just a natural starting point for the cartel but they are. I guess your argument then is the fact that he wasn't bothered in those two places doesn't mean he couldn't have been bothered but there is no evidence in the record he was bothered in those two places is that correct. There is evidence that he received a threatening telephone call while he was in Pueblo on the way to Pueblo your honor and that telephone call was we're going to find you and we're going to kill you and frankly when you're coupling that with the fact that his wife was already abducted and killed and his brother-in-law was killed by the why he is why he's running away and and frankly anyone would and oh I'm sorry well I want to ask you something about your asylum claim the petitioner states he will be persecuted because of his membership in the social group defined as his family but in his reply brief he argues that he is not similarly situated to his family members that are currently residing in Mexico. Can you elaborate on your proposed social group and why it is cognizable here? Absolutely your honor. The social group is based on his relationship to his wife and family relationship as this court has recognized is a cognizable social group but the fact it's not the entirety of his family and I think that's I think the discrepancy your honor is referencing. The fact that there are other family members who are similarly situated in Mexico I'm sorry who are not who are living in Mexico is not a reflection of the fact that they're similarly situated but the relationship between Mr. Avina and his wife is that is one of family and in fact the reason he even volunteered to help an Indian to help his wife track down or get some form of closure on who murdered her brother was because of the closeness of their relationship and that is a sufficient nexus to to his fear of the cartel. Why doesn't the fact that the Mexican police showed up at petitioners house upon request and the fact that they were investigating the murder of Avina's wife provide the substantial evidence in support of the IJ's finding that the police have not acquiesced to cartel gang violence? Your honor the reason for that is because this courts guidance in Madrigal and in several cases after that turns on whether the government's efforts are successful not whether they are willing to do it or interested in doing it certainly every government wants to stop cartel violence but in Mexico they are failing and we have that directly from the country conditions report that despite attempting to curb cartel violence it's not working it's not successful and frankly the evidence that the IJ and the board have pointed to the fact that the Attorney General had uncovered bodies and unfortunately an Adina's body is just the opposite of what Madrigal is demanding the standard here is is the government successful they have not successfully stopped the Jalisco cartel in these instances in killing Jesus Alberto and killing an Adina. Okay the standard is that you have to be completely successful in putting the cartel down in order to meet the standard of acquiescence that doesn't I don't believe the cases stand for that proposition. You're right your honor it's not it's not they have to be completely successful but there has to be there has to be evidence or examples of success and we have firsthand that the police reaction to Jesus Alberto's murder by the Jalisco cartel was forget about it leave it alone close your eyes on it don't get involved don't stir any trouble and that is exactly what what demonstrates and confirms that local police will acquiesce in Mr. Adina's torture and in fact apologies and I think taking that all all together shows that local police of Mexico would so acquiesce in Mr. Adina's torture and we also have here at two minute less than two minutes do you want to save your time I see that yes your honors I'd like to save my time and thank okay thanks but before I argue either of my I'll still give her the two minutes okay thank you all right we'll hear from the government good morning your honors my name is Catherine McKinney and I represent the Attorney General Merrick Garland in this matter your honors this petition for review should be denied the petitioner substantial evidence supports the agency's determination that the one anonymous threat that the petitioner did not constitute past persecution and the harm to his family members while certainly unfortunate and tragic didn't establish past persecution to him because if you want to respond I think the record seems to indicate the suspected cartel members were actively searching for Avina as evidenced in the fact that they visited his place of business called his cell phone even after he fled Colima when coupled with the national presence of the cartel why doesn't that compel the conclusion that Avina could not safely relocate I think that's I think I'm distilling what mr. Artunian is arguing but maybe maybe I'm not doing it as well as she did I guess your honor thank you for that question because past persecution hasn't been shown for purposes of asylum the burden would be on the applicant to show that he couldn't relocate and the evidence as to the unfortunate deaths of the family members the ex-wife and ex-brother-in-law those are as far as what we have in the record here unsolved so as the immigration judge found we don't know why those unsolved crimes occurred so we don't know who perpetrated them in that respect secondly we have very strong evidence here in the form of the petitioner having successfully visited three cities of Puebla, Muriela, and staying in Tijuana in each time for a month without any threats or harm to him during that time is evidence that he could relocate it's substantial evidence supporting the agency's determination go ahead judge Hawkins what if he was simply hiding from the cartel does that cast the balance a little more in favor of the petitioner and that's the argument we just heard he wasn't just spending vacation time in those three cities he was hiding how does that affect the government's argument I believe that the petitioner indicated that he remained with family members each of the daughters I believe in in each of those locations and don't the evidence in the record does not establish that he was in hiding during that time or I believe the other word used in the petitioners brief was that he was forced to live a nomadic existence and the evidence falls short of that the evidence has that the evidence establishes that for example he traveled to Puebla and then a month later decided to travel to Muriela there isn't an indication that during that time in Puebla he was threatened or harmed in any way that would cause him to then visit the second daughter in Muriela what we do have during that time is some evidence of individuals and again unknown individuals the inference would be that they were connected to the Jalisco Cotel and the evidence that the inference that petitioner requests the agency draw from the evidence is that those members were cartel members who were in his hometown at the time a month isn't that long though okay a month isn't that long so in two places in a month I think that's what she's arguing obviously let's say it were at six months in each spot and he wasn't bothered is the evidence is that stronger evidence for you would you say would it be stronger had he remained six months in each place I'm not aware of a bright line rule that three months I'm just saying I'm not hypothetically wouldn't you rather be arguing that it was six months in each place than one month in each place each case would stand on its own facts and if an individual had successfully relocated for a longer period of time that might arguably be stronger evidence here we have evidence that he remained for a month at each location and was not at that in that look those locations threatened or harmed but we have additional evidence here we also have other family members who reside in Mexico with our without harm including the daughter who was at the home when the ex-wife was kidnapped and she was threatened at that time and she came I believe the record reflects with the petitioner initially to the United States and then abandoned her asylum payment claim and returned and the testimony we have is that she remains in Mexico and threatened and unharmed in addition to the other two daughters that the petitioner was living with when he relocated to those respective cities we also have the family members of the brother-in-law who was unfortunately killed who remained in Mexico and the record does not establish that they were threatened or harmed including a similarly situated relative who had received anonymous telephonic threats was able to successfully relocate so that individual that would be also strong evidence supporting the agency's decision and with respect to relocation on the count analysis substantial evidence supports the agency's determination that the petitioner would not more likely than not face torture if removed to his native Mexico for one thing there was no past torture shown here additionally the agency considered the ability of the petitioner to relocate as he had in the past additionally substantial evidence supports the agency's determination that acquiescence of a government official had not been shown in this case the government acknowledges that some of the background evidence as we cited in our government report here in the record indicating that the Jalisco cartel is a dangerous cartel and that the cartel has been growing in strength I believe the report in the record shows that it's one of the fastest growing cartels we do have that country conditions evidence but we also have the evidence specific to what happened in petitioners case for example when the brother-in-law was unfortunately unfortunately is one way to put it how many I mean how many bodies do we have to stack up before then it's like say if we had another one in the family or two more in the family with that hypothetically does that weaken an argument that that you that for petitioner compelling a different result I mean the more bodies you have of family members doesn't that wouldn't doesn't it get the case a little stronger your honor I think you were a your question is more directly posed to the issue of whether or not harm to family members could establish the likelihood of future torture hypothetically the government might agree that in that instance the government has a disputed that harm to family members is relevant in this context but the government's point there was actually that when the brother-in-law was killed and was in the hospital the police were already there at the hospital there was also evidence in the record that the police went to following the brother-in-law's death went to the brother-in-law's mother and questioned her so there was evidence of an investigation but the record reflects the murder is unsolved similarly with respect to the ex-wife when she was killed the family learned of the deaths precisely because there was an investigation into into that death well let me ask you this I understand that the IJ found Avena to be credible is that correct so if they take that one step further shouldn't we take his representation that he feared for his life and had to flee from place to place at face value if he was found to be credible or how do we look at that I think in the asylum context for example we might distinguish between an applicant's genuine fear of persecution and whether or not that's well-founded I know that that here the petitioners apparently abandoned the withholding of claim and is just pursuing asylum and and cap he can of course credibly fear that he will be harmed but in the asylum context we still have to look at whether or not that's well-founded and in the cat context here we have to look at whether or not he's established that he more likely than not will face the torture he fears so that would be how we would look at it in that context so what you're saying is we could we could believe him that he really feels that way but you could still win is that your with respect to him exactly your honor with respect to asylum you could believe him that he fears harm and agree with the agency or at least find that the substantial evidence in the record supports the agency's determination that he did not show for example a likelihood of future persecution in the asylum context because he could because he could reasonably relocate or that in the cat context he did not show that he more likely than not would face torture for a combination of factors that the agency looked at such as the absence of past torture to him the other additional evidence in the record here we have the investigation into the death the fact that he could relocate at several different cities and I see that my time is up government requests that the court from the agency's decision and denied a petition for review thank you to either of my colleagues have any additional questions of the government all right thank you all right this are tuning in you have you have a little bit of time left on rebuttal thank you a minute 42 seconds thank you I had three short points to address the government's argument that there was only one anonymous threat and we don't know why this happened judge Callahan you're right mr. Avena's testimony was found credible undisputed and there were no adverse inferences here we don't need to keep pilot on more bodies into this fact pattern the evidence shows that all of the torture and was inflicted by the Jalisco cartel and that same cartel turned their attention to mr. Avena and the police's reaction to all of this was stay quiet leave it alone that is all together that just makes up the mr. Avena's cat claim on relocation your honors the evidence that a person went into hiding for some period of time before fleeing does not support the conclusion that the person can successfully relocate that's what mr. Avena is doing here he is living in in hiding and judge Callahan again you're right we have to take his testimony that he is living in fear at face value we have this exact circumstances in Singh versus Holder where the applicant was also hiding somewhere for three weeks at her aunt's house other family members that are living there safely that was my third point okay the fact that there are other family members living there does nothing for this argument they're not similarly situated they were not the ones looking into the cartels and investigating the cartel or looking into who they were murdering the cartel has an interest in silencing those who poke their nose where it doesn't belong that's what an endena did and that's what mr. Avena did as well together they are the only ones who have investigated into the cartels activities they are the only ones who similarly situated all of the cases that the government relies upon on this point all of those applicants and their family members were in the same position that's not the case here your honors my time has expired and I just want to say thank you for your time and the evidence compels granting mr. Avena's petition thank you all right thank you both for your argument and once again thank you for pro bono counsel and both of you did an excellent job and we appreciate when us in the process this matter will stand submitted
judges: Hawkins, Callahan, Fitzwater